# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ELAINE DIANNE ELLIS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>    Defendant. ) | CIVIL ACTION NO. 17-00034-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elaine Dianne Ellis brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 14, 26[1]) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held September 13, 2017, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of §

---

[1] With the Court's permission (*see* Docs. 24, 25), Ellis filed a corrected brief (Doc. 26) after briefing had closed. The corrected brief (Doc. 26) is deemed to supersede Ellis's initial brief (Doc. 13), which the undersigned has not considered herein.

405(g).[2]

## I. *Background*

On January 9, 2014, Ellis filed an application for SSI with the Social Security Administration ("SSA"). On January 13, 2014, she filed an application for a period of disability and DIB. Both applications alleged disability beginning July 29, 2013.[3] After her applications were initially denied, Ellis requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, and a hearing was held on December 15, 2014. On April 27, 2015, the ALJ issued an unfavorable decision on Ellis's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits. (*See* R. 33 – 50).

The Commissioner's decision on Ellis's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied Ellis's request for review of the ALJ's decision on November 15, 2016. (R. 1 – 6). On January 18, 2017, Ellis filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* (Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 27, 29).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).

"'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4] "In determining whether substantial evidence exists, [a

---

[4] Nevertheless, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…'" *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to

---

the district court').''); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[5]

The Social Security Regulations outline a five-step, sequential

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."

*Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). "[B]ut when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Analysis*

Ellis argues that the ALJ reversibly erred, *inter alia*, in failing to find Ellis's subjective testimony fully credible as to the limiting effects of her physical impairments. This Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. The standard also applies to complaints of subjective conditions other than pain. The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam) (citations omitted). "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms,…the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)

(per curiam)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

At Step Four, the ALJ summarized Ellis's testimony of her physical impairments as follows:

> The claimant testified that she had knee and hand pain. Her feet and hand pain were rated as an eight or nine on a pain scale of one to ten, with ten being the most severe. She claimed that due to sleep apnea, she could sit down and fall asleep anywhere. She also provided her physical limitations. She could not lift anything over three to four pounds. She could not stand more than five minutes or sit more than five or six minutes without having to get up and move around. For example, during church services, she needed to stand up. The claimant indicated that she was unable to tie her shoes or bathe independently due to her physical issues.

(R. 43). The ALJ found Ellis's "allegations not fully credible[,]" stating as follows:

> The undersigned notes that the claimant experiences limitations and some of the symptoms alleged, but not to the extent that is alleged.
>
> In spite of the claimant's allegations of disabling impairments, the medical record reflects minimal medical treatment for her impairments. For example, she was not using a CPAP machine to treat her sleep apnea (Hearing Testimony). In spite of her allegations of disabling pain, the claimant has not sought additional treatment for pain including physical therapy, surgery, or treatment from a pain clinic. While there are some allegations of a lack of insurance/funds for medical treatment, there is no evidence of record that the claimant attempted to obtain low-or no-cost medical care within the community. The claimant's failure to seek treatment for these conditions is not consistent with her allegations of ongoing, disabling impairments and detracts from her overall credibility regarding the extent of her symptoms and limitations.
>
> …
>
> The claimant also made a number of inconsistent statements. She testified that she had no children in the home. Yet, she reported to Dr.

> Reynolds in March 2014 that she had a child (Ex. B1F/3). The claimant reported to her psychiatrist that she had side effects from her Pristiq medication. Yet in the same month, the claimant reported to her therapist that she was experiencing no mediation side effects (Ex. B7F). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistency suggests that the information provided by the claimant generally may not be entirely reliable.
>
> The claimant's history of conservative treatment and the relatively mild objective findings – all suggest that limiting her to a range of light exertion is appropriate. Additionally, this evidence also demonstrates that claimant's allegations appear somewhat more excessive than the record can support.[7]

(R. 45). Ellis argues that the ALJ's credibility finding is not supported by substantial evidence. The undersigned agrees.

"The ALJ may consider the level or frequency of treatment when evaluating the severity of a claimant's condition, but the regulations specifically prohibit drawing 'any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.' " *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (per curiam) (quoting Social Security Regulation 96–7p (SSR 96–7p) at 7). Therefore, "[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per

---

[7] The ALJ further stated that his credibility determination was "also largely consistent with medical opinions." (R. 45). However, the ALJ later acknowledged "that there were no physical functional opinions provided within the record." (R. 46 (emphasis added)).

curiam) (internal quotation marks omitted); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (per curiam). However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists. *Ellison*, 355 F.3d at 1275." *Id.*

Relevant here, the Eleventh Circuit has held that

> poverty excuses noncompliance. *See, e.g., Lovelace*[ *v. Bowen*]*,* 813 F.2d [55,] 59[ (5th Cir. 1987)] ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen,* 784 F.2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir. 1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits). Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).

*Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). Accordingly, "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison*, 355 F.3d at 1275 (citing *Dawkins*, 848 F.2d at 1214).

It is apparent here that ALJ's credibility determination was based primarily on Ellis's perceived "minimal"/"conservative" medical treatment for her physical

impairments, in particular her failure to use a CPAP machine to treat her sleep apnea. (R. 45). However, the ALJ acknowledged that there "are some allegations of a lack of insurance/funds for medical treatment" (R. 45), and Ellis's brief cites multiple instances in the administrative record indicating Ellis's inability to pay for treatment, particularly a CPAP machine. (*See* Doc. 26 at 4, 11 (citing R. 65 (Hearing Testimony: "Q[:] And so you can't get another CPAP machine? A[:] Exact - - it's the insurance."); 256 (Information provided by Ellis on SSA Function Report-Adult: "I have no insurance and the clinic helps me get my medicine…I can't pay for sleep apnea treatment."); 359 (8/4/2014 psychiatric notes of Dr. Donahue: "client has been diagnosed with severe sleep apnea, but is not using C-PAP or other device due to lack of insurance"); 371 (5/27/2014 notes of Dr. Howard: "Clt reports several stressors including financial hardship, inability to work due to sleep disorder & health problems that need attention, but lacks insurance."); 376 (10/8/14 notes from Cahaba Mental Health Center ("Clt reports having problems financially, trying to afford medication for diabetes."); 378 (12/1/2014 report of Dr. Hodo: "She has a sleep problem, and has been prescribed a CPAP however she has no insurance and no money therefore she can not use the CPAP."))).

Nevertheless, finding that there was "no evidence of record that [Ellis] attempted to obtain low-or no-cost medical care within the community[,]" the ALJ concluded that Ellis's "failure to seek treatment…is not consistent with her allegations of ongoing, disabling impairments and detracts from her overall credibility…" (R. 45). However, the ALJ cited no record evidence to support a

finding that low- or no-cost medical care was available to Ellis for her physical impairments; his mere speculation as to the existence and availability of such care is not evidence at all, much less substantial evidence. Moreover, the ALJ determined that Ellis had failed to pursue medical treatment and that her claims of poverty did not excuse this failure because she…failed to show that she pursued medical treatment. Given this circular reasoning and the lack of any record evidence indicating alternative medical care was available to Ellis, the undersigned finds that the ALJ's rejection of Ellis's poverty as good cause for failure to pursue medical treatment is not supported by substantial evidence.[8]

While the ALJ considered two other factors in making his credibility determination, those factors, even considered in the aggregate, do not constitute substantial evidence that would excuse the ALJ's failure to properly consider Ellis's poverty as good cause for failure to seek treatment. The ALJ claimed "a number of

---

[8] *Cf. Henry*, 802 F.3d at 1269 ("The ALJ's determination that Henry's 2012 testimony is not credible is not supported by substantial evidence because the ALJ failed to fully and fairly develop the record with respect to Henry's ability to pursue a more rigorous course of treatment. Here, the ALJ discredited Henry's testimony for the same reasons that he gave little weight to Dr. Barber's opinion—that Henry worked after his initial injury, received 'conservative treatment,' and did not take narcotics. The ALJ had an obligation to 'scrupulously and conscientiously probe' into the reasons underlying Henry's course of treatment, yet there is nothing in the record indicating the ALJ inquired into or considered Henry's financial ability to seek an alternate treatment plan. Instead, the ALJ focused on the absence of aggressive treatment as a proxy for establishing disability. Absent proper factual development, we cannot say there is 'such relevant evidence as a reasonable person would accept as adequate to support [the] conclusion' that Henry's testimony is not credible. *See Winschel,* 631 F.3d at 1178 (internal quotation marks omitted). Furthermore, in the absence of additional information regarding Henry's financial ability to seek alternate treatment, the ALJ could not fairly assess the severity of Henry's back pain and potential disability." (citation omitted)).

inconsistent statements" by Ellis, but only specifically noted two. As a representative sample, they are insubstantial as evidence weighing on credibility. First, the ALJ noted that Ellis's testimony at the ALJ hearing that she had no children in the home (*see* R. 58) was inconsistent with the notation by consultative examining psychologist Dr. Reynolds in his March 2014 report that Ellis had a child. However, the undersigned agrees with Ellis that such inconsistency appears to be the fault of Dr. Reynolds, as his report first notes that Ellis "has no children" but then later states that Ellis "has delivered her baby." (R. 337 – 338 [SSA Ex. B1F, pp. 2 – 3]). The ALJ's decision to adversely attribute this inconsistency to Ellis is not supported by the record.

Second, the ALJ claimed that Ellis made inconsistent statements to her medical care providers regarding medication side effects. The ALJ cites to SSA Exhibit B7F, which consists of an immaterial cover letter and two medical reports dated 12/9/14: a report by a psychiatrist noting that Ellis "reports she is still experiencing nervousness and palpitations since changing to Prozac" (R. 383), and a "progress note" by a therapist conclusorily checking "no" for "side effects from medications" (R. 384). Any inconsistency between these two statements is minimal;[9] it certainly does not substantially show that Ellis "affirmatively stated she had no medication side effects, despite stating the opposite to her psychiatrist," as the Commissioner suggests (*see* Doc. 14 at 9).

---

[9] Indeed, the psychiatrist's report also notes that Ellis had "no psychosis, no suicidal or homicidal ideation[,]" no "delusions" or "hallucinations," and "good" insight and judgment. (R. 383).

The ALJ also noted, at the end of his credibility determination, that Ellis's testimony was not supported by "the relatively mild objective findings," but the ALJ failed to cite any specific examples in the record with regard to Ellis's physical impairments. Particularly in light of the inadequacy of the other factors the ALJ relied on in making his credibility determination, as explained above, this conclusory statement does not amount to a clearly and explicitly articulated reason for discrediting Ellis's subjective complaints. *Dyer*, 395 F.3d at 1210. *See also id.* ("The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole." (quotations omitted)). Because the undersigned finds inadequate the ALJ's credibility determination as to Ellis's subjective complaints regarding her physical impairments, the Commissioner's final decision denying Ellis's applications for benefits is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).

Ellis requests that the Court "[r]emand with an award of benefits," and only requests a remand for further proceedings in the alternative. Generally, remand to the Commissioner for further proceedings "is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]"

*id.*, Ellis has failed to convince the undersigned that this standard is met here.[10] Moreover, the Court is ordering remand because the Commissioner failed to make a sufficient credibility determination; generally, "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212. Accordingly, the undersigned finds it appropriate in this case to remand for further proceedings.[11]

---

[10] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

[11] At oral argument, counsel for Ellis expressly withdrew her claim that the ALJ failed to develop the record by not ordering a consultative examination. Having considered Ellis's remaining claims of error, the undersigned finds it unnecessary to address them in light of the determination that remand is appropriate on the grounds addressed herein.

## IV. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued November 15, 2016, denying Ellis's applications for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Ellis a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Ellis be awarded Social Security benefits on the subject applications following this remand, the Court hereby grants Ellis's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[12] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of

---

[12] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 14th day of November 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**